**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Johnnie James WILLIAMS,
Defendant–Appellant.**

**No. 97–5422.**

United States Court of Appeals,
Sixth Circuit.

Argued: Dec. 11, 1998.

Decided and Filed: Feb. 5, 1999 *.

* This decision was originally issued as an "unpublished decision" filed on February 5, 1999. On September 17, 1999, the court designated the opinion as one recommended for full-text publication.

Argued: Larry E. Parrish, Law Offices of Larry Parrish, Memphis, Tennessee, for Appellant.

David M. Uhlmann, U.S. Department of Justice, Environment & Natural Resources Division, Washington, D.C., for Appellee.

On Brief: Larry E. Parrish, Law Offices of Larry Parrish, Memphis, Tennessee, for Appellant.

David M. Uhlmann, U.S. Department of Justice, Environment & Natural Resources Division, Washington, D.C., for Appellee.

Before: SUHRHEINRICH and CLAY, Circuit Judges; CARR, District Judge.**

## OPINION

CARR, District J.

This is an appeal from the conviction and sentencing of appellant Johnnie James Williams (Williams) for one count of illegal storage of hazardous waste and one count of illegal disposal of hazardous waste, both in violation of the Resource Conservation and Recovery Act, 42 U.S.C. § 6928(d)(2)(A). Williams appeals his conviction on four grounds: 1) insufficiency of the evidence, 2) ineffective assistance of counsel, 3) failure to order a new trial, and 4) violation of due process in sentencing. None of these claims has merit. The conviction and sentence will be affirmed.

## I. Sufficiency of the Evidence

█ Appellant ran W & R Drum, a company that reconditioned previously used metal drums and sold them for reuse. (Appellant's Brief at 7). As a result of his activities at W & R Drum, appellant was convicted on two counts of violating 42 U.S.C. § 6928(d)(2)(A) which provides, in part:

(d) Criminal Penalties

Any person who—

. . . .

(2) knowingly treats, stores, or disposes of any hazardous waste identified or listed under this subchapter—

(A) without a permit under this subchapter or pursuant to title I of the Marine Protection, Research, and Sanctuaries Act . . . .

. . . .

shall, upon conviction, be subject to a fine of not more than $50,000 for each day of violation, or imprisonment not to exceed two years (five years in the case of a violation of paragraph (1) or (2)) or both.

42 U.S.C. § 6903(5) defines "hazardous waste" as "solid waste, or combination of solid wastes, which because of its quantity, concentration, or physical, chemical, or infectious characteristics may . . . pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported, or disposed of, or otherwise managed."[1] *See* 40 C.F.R. §§ 261.10 & 261.11.

As to the knowledge requirement for a violation of 42 U.S.C. § 6928(d)(2)(A), the trial court instructed the jury that it must find "that the defendant . . . knew that the waste was stored and disposed at W & R Drum and knew that the waste had the potential to be harmful to others or the environment." (Joint App. at 38–39). The jury was also instructed that the defendant could have the requisite state of mind based on willful blindness if "he was aware of a high probability that waste with the

---

** The Honorable James G. Carr, United States District Judge for the Northern District of Ohio, sitting by designation.

1. "Solid waste" includes "solid, liquid, semi-solid, or contained gaseous material." 42 U.S.C. § 6903(27).

potential to be harmful to others or to the environment was stored or disposed at W & R Drum, and that the defendant deliberately closed his eyes to what was obvious." (Joint App. at 41). *See also United States v. Lee*, 991 F.2d 343, 349–51 (6th Cir.1993). Appellant claims that there was insufficient evidence from which the jury could find appellant knew that the waste had "the potential to be harmful to others or the environment."

Appellant frequented the facility where the storage and dumping took place. (Appellant's Brief at 22). · At trial, there was testimony that defendant had been informed that his past activities violated environmental statutes, (Joint App. at 386–87, 397–98, 420–21) there were noxious fumes at the facility, (Joint App. 312, 321, 348–49, 717–19, 872–73) and there was discolored run-off from the drums. (Joint App. 447–52). In short, there was sufficient evidence of circumstances that would lead a reasonable person to believe that the substances in the drums at the facility "had the potential to be harmful to others or the environment." Appellant argues that there was insufficient evidence to show that *he* knew the substances had "the potential to be harmful to others or the environment." He argues that nothing in evidence necessitated the conclusion that he had the requisite state of mind. Further, the evidence was consistent with the hypothesis that he did not have the requisite state of mind. However, the government is not held to such a high burden of proof.

■ The jury·was instructed that "[o]rdinarily, there is no way that a defendant's state of mind can be proved directly, because no one can read another person's mind and tell you what that person is thinking." (Joint App. at ·40). Furthermore, a defendant will rarely admit having the requisite state of mind. However, "a defendant's state of mind can be proved indirectly from the surrounding circumstances ...."(*Id.*) A court "may conclude a conviction is supported by sufficient evidence even though the circumstantial evidence does not 'remove every reasonable hypothesis except that of guilt.'" *United States v. Clark*, 928 F.2d 733, 736 (6th Cir.1991) (quoting *United States v. Stone*, 748 F.2d 361, 363 (6th Cir.1984)). The jury could have concluded that appellant behaved and thought like a reasonable person even though appellant makes claims to the contrary. The jury was not obligated to believe his protestations of ignorance. Alternatively, the jury could have found that appellant was ignorant, but that his ignorance resulted from willful blindness. Consequently, there was sufficient evidence to conclude that appellant had the requisite state of mind.

## II. Ineffective Assistance of Counsel

■ Where the record below is sufficient, a claim of ineffective assistance of counsel may be considered on direct appeal. *See United States v. Pierce*, 62 F.3d 818, 833 (6th Cir.1995). The standard for an ineffective assistance of counsel claim was laid out by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984):

First, the defendant must show that counsel's performance was deficient. This requires a showing that counsel made errors so serious that counsel was not functioning as counsel guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Appellant does not meet either part of the *Strickland* test.

"[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.* at 689, 104 S.Ct. 2052. Here, trial counsel's alleged errors include 1) pursuing a risky trial strategy, 2) failing to make a post-trial motion for acquittal, 3)

reserving his opening statement, 4) making appellant testify that appellant would not testify on his own behalf at trial, 5) failing to make a motion to dismiss for selective prosecution, 6) overstating in open court the future testimony of a potential witness, and 7) making a damaging admission in his opening statement. Even in combination, the alleged errors were not so serious that "counsel was not functioning as counsel." *Id.* at 687, 104 S.Ct. 2052.

"[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be sound trial strategy.' " *Id.* (citations omitted). Even assuming trial counsel's strategy was risky, it does not follow that it was unsound. Likewise, there was nothing unusual about the decision to reserve the opening statement until after the close of the government's case.

■ Appellant also fails to demonstrate that any of the alleged deficiencies in trial counsel's performance resulted in prejudice to the defendant. Appellant fails to show that his claim of selective prosecution had any merit whatsoever. The failure to make a post-trial motion to acquit hardly seems prejudicial in view of the fact that a similar motion was made at the close of the government's case and after denial of the motion, trial counsel proceeded directly to closing arguments. (Joint App. at 753–56). As to the statement regarding the potential witness, the witness never testified for either side and there is no showing that the outcome of the trial would have been different in absence of that statement. Appellant testified that he would not take the stand at trial. He did this before the trial judge alone, while the jury was sequestered outside the courtroom. (Joint App. at 741–42). It is diffi-

cult to see how this could erode confidence in the jury's verdict.

■ Finally, the supposed "admission" was not an admission at all. Appellant argues that he did not know the waste at his facility had the potential to be harmful to people or the environment. Appellant's trial counsel argued that appellant was probably aware that having hazardous material at his facility could be a problem because appellant had "resolved the Aeolian problem years earlier." (Joint App. at 772). Appellant's trial counsel then argued that the fact that appellant did not attempt to ship out the hazardous waste either legally or illegally shows that "he didn't know [the hazardous wastes] were on the site." (*Id.*). In other words, if appellant had the requisite knowledge, he would not have let the hazardous waste remain at his facility; he would have disposed of it. In light of the overwhelming evidence of appellant's guilt, it is not surprising that the jury found this argument was unconvincing. This does not mean that the argument caused any prejudice.

### III. Failure to Order a New Trial

■ After voir dire, during the trial, one of the jurors realized that she was familiar with the W & R Drum facility. (Joint App. 844–45). She told this to the other jurors on the first day of deliberations. The foreperson sent a note to the trial judge. (*Id.* at 805). The juror familiar with the facility testified that her failure to disclose that information was inadvertent and the information would not impact her impartiality.[2] (*Id.* at 834–37). All the other jurors likewise testified that they remained impartial. (*Id.* at 838–52). The judge then decided to allow the jury to continue deliberations and there were no objections. (*Id.* at 834–37).

---

**2.** Appellant has not proved that Ms. Hardin deliberately concealed material information. Thus, bias is not implied. *See McCoy v. Goldston* 652 F.2d 654, 659 (6th Cir.1981). Appel-

lant must prove actual bias. *See Murphy v. Florida,* 421 U.S. 794, 800, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975). Appellant has not shown actual bias.

■ The trial judge has broad discretion to determine the scope of proceedings necessary to determine whether there has been improper influence on a jury. *See United States v. Shackelford,* 777 F.2d 1141, 1145 (6th Cir.1985). Furthermore, a district court's finding of impartiality should not be disturbed absent "a showing that prejudice is manifest." *United States v. Howard,* 752 F.2d 220, 225 (6th Cir. 1985) *vacated on other grounds, U.S. v. Howard* 770 F.2d 57 (6th Cir.1985) (quoting *Haney v. Rose,* 642 F.2d 1055, 1060 (6th Cir.1981)). There is nothing in the record to indicate any abuse of discretion on the part of the trial judge when she failed to order a new trial.

### IV. Enhancement of Sentence Under the Guidelines

■ Appellant's argument that the enhancement of his sentence violates due process is without merit. U.S.S.G. § 2Q1.2(b)(3) provides that "[i]f the offense resulted in disruption of public utilities, evacuation of a community, or if cleanup required a substantial expenditure, increase by 4 levels." The Sixth Circuit has held that a cleanup costing in excess of $100,000 is a substantial expenditure. *United States v. Bogas,* 920 F.2d 363, 369 (6th Cir.1990). The cleanup of appellant's facility cost $1.5 million. (Joint App. at 523). Appellant argues that if he had been able to pay the $1.5 million, his sentence would not have been enhanced. Nothing supports this allegation. The enhancement depends on whether the "cleanup required a substantial expenditure," regardless of who pays for it.

### Conclusion

For the foregoing reasons, we AFFIRM defendant's convictions and sentence for two counts of violating the Resource Conservation and Recovery Act, 42 U.S.C. § 6928(d)(2)(A).