**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 5 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

CARL EUGENE HINES,

Defendant-Appellant.

No. 98-7095
(D.C. No. CR-97-47-B)
(E.D. Okla.)

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

DANIEL ROBERT MARTIN,

Defendant-Appellant.

No. 98-7097
(D.C. No. CR-97-47-B)
(E.D. Okla.)

---

**ORDER AND JUDGMENT** *

---

Before **BRORBY** , **PORFILIO** , and **LUCERO** , Circuit Judges.

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

These appeals arise from the same trial in which both appellants were jointly accused and convicted. [1] We combine them here for ease of disposition. We must determine whether appellants' convictions for violations of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6901-6992, should be overturned because the government failed to prove that they "knowingly" committed the environmental crimes. We must also decide whether the district court erred in denying appellant Carl Eugene Hines's motion to sever his RCRA counts from his drug conspiracy counts, and in failing to declare a mistrial for allegedly prejudicial remarks by several witnesses and by his co-defendant's counsel, and whether, in the case of appellant Daniel Robert Martin, the district court improperly admitted firearm and drug evidence. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

**I**

Hines owned a business in Marshall County, Oklahoma, named H&J Auto. Danny Jones, the Marshall County emergency manager director, noticed numerous fifty-five gallon drums standing outside H&J Auto and informed Hines that the barrels were a "danger," and that Hines had "to get rid of them properly."

---

[1]     After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). These cases are therefore ordered submitted without oral argument.

(R. at 66.) Jones later filed a complaint with the Oklahoma Department of Environmental Quality ("ODEQ") about the barrels, stating they were leaking and the owner would not retrieve them. ODEQ investigator Kelly Davis went to H&J on February 4, 1997, to inspect and discovered approximately 34 barrels behind the H&J building. The barrels were old and rusted. Some were leaking; some were bulging, indicative of hazardous waste; some contained methylethyl ketone labels; and some emitted a strong paint-thinner-like odor. Hines told Davis that another business, Bullard Oil, had left the barrels there and that he had no knowledge of how or why the barrels were placed in his salvage yard. Davis told Hines the barrels had characteristics of hazardous waste and that he should stay away from them pending further investigation.

The ODEQ investigated and determined Bullard Oil had not placed the barrels at H&J Auto. It then notified Hines that he was the party responsible for the clean-up. ODEQ inspector Johnson returned to H&J on February 14, 1997, to test the material inside the barrels, but they had disappeared. Hines told Johnson that Bullard Oil had removed them. Later, when recounting this story to a friend, Hines laughed and said, "You should have seen the look on her face." (R. at 73-74.)

Shortly after ODEQ investigator Davis's visit to H&J Auto, Hines instructed his friend Martin, and two other associates, Victor Lucas and Billy Jack

Orange, to remove the barrels. Hines assisted Lucas and Orange with loading the barrels onto a truck trailer. Martin told Lucas and Orange to first attempt to take the barrels to the house of one Ronnie Hickman, but if Hickman would not take the barrels, to take them to Martin's home and place them in his carport. Hickman took only a few of the barrels, but would not allow Lucas and Orange to set them on the ground, stating he was afraid the barrels would ruin his water supply. Lucas testified he thought Hickman's concern was "extremely realistic," because the barrels were "old and rotten and rusted out, had holes in them . . . [and] were going to leak." (R. at 1618.)

Lucas and Orange unloaded the barrels in Martin's carport late that night. Martin then paid a neighbor $80 to haul some of the barrels from his carport and dump them in a vacant lot near Martin's home. Hines told his associates to say nothing about moving the barrels and instructed them to state, if asked, that they had gone away for the weekend and the barrels were gone when they came back. (Id. at 1619-20.)

When the ODEQ learned the barrels had disappeared from Hines's salvage yard at H&J Auto, investigators from the Environmental Protection Agency ("EPA") and the Federal Bureau of Investigation ("FBI") launched an investigation into their disappearance. Eventually investigators discovered the barrels in Martin's carport and neighboring lot. The FBI then informed the local

county sheriff, Decco Baxter, of the investigation. The materials in the barrels were tested by ODEQ and found to contain hazardous waste, as defined by regulations promulgated pursuant to RCRA.

In addition to participating in the foregoing activities, Hines was the leader of an extensive conspiracy to manufacture and distribute methamphetamine. All of the individuals involved in moving the barrels containing hazardous waste from Hine's salvage yard were also all involved with Hines in the drug conspiracy. The county sheriff, Decco Baxter, who was a methamphetamine addict, also participated in the drug conspiracy. In exchange for methamphetamine and money from Hines, Baxter agreed to protect Hines from local law enforcement. When the FBI notified Baxter of their investigation into the missing barrels, Baxter, Hines and Martin concocted a false story in an attempt to divert the FBI's suspicion away from Hines.

Baxter filed a false report with the FBI two days after the FBI notified him of its investigation of the barrels. The report claimed Martin had called and asked to meet with Baxter alone. Baxter reported that, at that meeting, Martin confessed to stealing the barrels from Hines. Baxter also indicated Martin had reported looking into Hines's house and seeing what appeared to be methamphetamine in a clear plastic bag and a set of scales. Baxter claimed in the

report to have then gone to Hines's house, obtained Hines's consent to search the premises, and discovered only a bag of cooking flour and a calculator.

The FBI did not deem Baxter's report to be credible and became suspicious of his involvement. Eventually, Baxter was arrested and confessed his report was a fabrication by Hines and Martin for the purpose of exculpating Hines from suspicion of criminal activity with respect to both hazardous waste violations and drug conspiracy. Hines and Martin were also charged. Martin was released on bail, fled, and was ultimately captured in Tennessee while in possession of drugs and firearms. Baxter and Orange pled guilty and testified for the government at Hines and Martin's trial.

Hines was convicted of illegally transporting hazardous waste to an unpermitted facility, in violation of 42 U.S.C. § 6928(d)(1) and 18 U.S.C. § 2; illegally transporting hazardous waste without a manifest, in violation of 42 U.S.C. § 6928(d)(5) and 18 U.S.C. § 2; and conspiring to transport hazardous waste, in violation of 18 U.S.C. § 371. He was also convicted of witness intimidation, in violation of 18 U.S.C. § 1512(b)(2)(A) and 18 U.S.C. § 2; conspiracy to manufacture and distribute methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(a)(1) and 18 U.S.C. § 2; being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g) and 18 U.S.C. § 2; and use of a firearm in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c)

and 18 U.S.C. § 2. The district court sentenced Hines to 420 months imprisonment.

Martin was convicted of two counts of illegally transporting hazardous waste to an unpermitted facility, in violation of 42 U.S.C. § 6928(d)(1) and 18 U.S.C. § 2; one count of illegally storing a hazardous waste without a permit, in violation of 42 U.S.C. § 6928(d)(2)(A) and 18 U.S.C. § 2; two counts of illegally transporting hazardous waste without a manifest, in violation of 42 U.S.C. § 6928(d)(5) and 18 U.S.C. § 2; and conspiring to transport hazardous waste, in violation of 18 U.S.C. § 371. Martin was also convicted of two counts of conspiracy to manufacture and distribute methamphetamine, in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2. He was sentenced to 240 months imprisonment.

## II

On appeal, Hines and Martin challenge their RCRA convictions on the ground that the government failed to prove by sufficient evidence that each "knowingly" committed the environmental violations. The relevant statutory provisions are as follows: Section 6928(d)(1) prohibits "knowingly transport[ing] or caus[ing] to be transported any hazardous waste . . . to a facility which does not have a permit. . . ."; Section 6928(d)(2)(A) prohibits "knowingly treat[ing], stor[ing], or dispos[ing] of any hazardous waste . . . without a permit. . . ."; and

Section 6928(d)(5) prohibits "knowingly transport[ing] without a manifest, or caus[ing] to be transported without a manifest, any hazardous waste . . . required . . . to be accompanied by a manifest."[2]

Hines argues the government failed to prove that he knew the barrels stored in his salvage yard contained hazardous waste, that the truck which transported the barrels lacked the required manifest, and that Martin lacked the required permit to store hazardous waste in his carport and vacant lot. Martin, for his part, likewise argues the government failed to prove he knew the barrels contained hazardous waste.

We review the record for sufficiency of the evidence de novo, determining whether, "'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime[s] beyond a reasonable doubt.'" United States v. Dozal, 173 F.3d 787, 797 (10th Cir. 1999) (alteration in original) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). Instead of examining the evidence piecemeal, we consider the collective inferences drawn from the evidence as a whole. See United States v. Wilson, 107 F.3d 774, 778 (10th Cir. 1997). We may neither use this evaluation to second-guess the jury's credibility determinations, nor may

_____

[2] A "manifest" is "the form used for identifying the quantity, composition, and the origin, routing, and destination of hazardous waste." 42 U.S.C. § 6903(12).

-8-

we reassess the jury's conclusions about the weight of the evidence presented. See United States v. Yoakam, 116 F.3d 1346, 1349 (10th Cir. 1997). Rather, if the jury's resolution of the evidence is within the bounds of reason, we must accept it. See id.

The knowledge requirement in § 6928(d) does not require proof that the defendant knew the materials at issue were identified or listed as a hazardous material under the RCRA regulations. United States v. Self, 2 F.3d 1071, 1091 (10th Cir. 1993). The government need only prove the defendant knew the material was hazardous in the sense of being potentially harmful to persons or the environment. See id.; see also United States v. Goldsmith, 978 F.2d 643, 645 (11th Cir. 1992) (the government need only prove the defendant had knowledge of the general hazardous character of the materials). Nor is the government required to prove defendants knew their actions were unlawful. See United States v. International Minerals & Chem. Corp., 402 U.S. 558, 565 (1971) ("[W]here . . . dangerous or deleterious devices or products or obnoxious waste materials are involved, the probability of regulation is so great that anyone who is aware that he is in possession of them or dealing with them must be presumed to be aware of the regulation."); United States v. Fiorillo, 186 F.3d 1136, 1155-56 (9th Cir. 1999), cert. denied, 120 S. Ct. 991 (2000). Moreover, "in a RCRA criminal

prosecution, the government may prove guilty knowledge by circumstantial evidence." Self, 2 F.3d at 1087 (internal quotation and citation omitted).

After reviewing the record, we conclude the evidence in this case was sufficient for the jury to infer that both Hines and Martin knew the material in the barrels was potentially harmful to others or to the environment. The barrels emitted noxious fumes and showed characteristics of hazardous materials, some were leaking, and some contained the label of a hazardous waste (methlyethl ketone). Ronnie Hickman refused to place the barrels on the ground for fear they would ruin his water supply. A rational juror could conclude that the environmental risk from the barrels was obvious. Hines had been warned both by Danny Jones and by the ODEQ that the materials in the barrels might be dangerous or contain hazardous materials, and that the barrels should not be moved. Both Hines and Martin were implicated in promulgating and disseminating the false story about Martin stealing the barrels, a story Baxter then reported to the FBI. All of this evidence is sufficient for the jury to conclude Hines and Martin were aware that the waste inside the barrels had the potential to be harmful to others or to the environment. See Self, 2 F.3d at 1091; see also United States v. Williams, 195 F.3d 823, 825 (6th Cir. 1999).

We also find the evidence was sufficient for the jury to conclude that Hines knew the truck and trailer used to transport the hazardous waste lacked the

-10-

required manifest and that Martin lacked a permit to store hazardous waste at his home. The truck and trailer used to transport the barrels were owned by Hollis Jones, Hines's business partner in H&J Auto. Neither Hines, Jones, nor H&J Auto were licensed to store, treat, transport, or dispose of hazardous waste. Hines did not provide the required manifest to the driver who picked up the barrels, nor did Hines provide the driver with any other information or documentation indicating the contents of the barrels. Hines, therefore, was in a position to know that the truck and its driver lacked the required manifest to transport hazardous waste.

After being warned by ODEQ not to move the barrels because of the possibility they contained hazardous waste, Hines ordered his associates to dispose of the barrels. He did not tell his associates to transport the barrels to a facility with a permit to store, treat, or dispose of hazardous waste; he merely told them he wanted to dispose of the barrels. Hines helped load them, rusted and leaking, onto a truck and trailer after regular business hours. He told the driver and the others involved in transporting the barrels to tell no one what had happened to the barrels and to say they had just disappeared one day. He then lied to ODEQ, stating Bullard Oil had removed the barrels. Hines neither paid his associates to transport the barrels nor Danny Martin to store them.

"It is common knowledge that properly disposing of wastes is an expensive task, and if someone is willing to take away wastes at an unusual price or under unusual circumstances, then a juror can infer that the transporter knows the wastes are not being taken to a permit facility." United States v. Hayes Int'l Corp., 786 F.2d 1499, 1504 (11th Cir. 1986). The jury could infer from Hines's unusual, clandestine, and deceptive behavior that he knew the barrels were not being transported under the requisite hazardous waste manifest and were not being taken to a permitted facility. Based on this evidence, a rational juror could conclude Hines knew that the truck and its driver did not have the required RCRA manifest, and knew that his friend, Danny Martin, did not possess a permit to store hazardous waste in the carport of his home or in the vacant lot behind his house. See Self, 2 F.3d at 1088 ("[T]he government may prove a defendant had actual knowledge of a material and operative fact by proving deliberate acts committed by the defendant from which actual knowledge can be logically inferred.) (quotation omitted). There was more than sufficient circumstantial evidence from which a reasonable juror could conclude that Hines knew the material in the barrels was potentially harmful and that he did not transport the waste to a permitted hazardous waste facility pursuant to a hazardous waste manifest.

## III

Hines raises three claims distinct from those raised by Martin.

### A

Arguing he was unfairly prejudiced, Hines challenges as an abuse of discretion the district court's denial of his motion to sever the RCRA environmental violations from the drug-related offenses. Fed. R. Crim. P. 8, governing joinder of offenses, permits the joinder of offenses that "are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." Even if offenses may be joined pursuant to Rule 8, the district court retains authority to grant severance under Fed. R. Crim. P. 14 if defendant will be prejudiced by joinder of the offenses. Defendant filed a motion for severance, which was denied.

"The alleged misjoinder of offenses under Rule 8 is a question of law subject to de novo review." United States v. Johnson, 130 F.3d 1420, 1427 (10th Cir. 1997). However, "we construe Rule 8 broadly to allow liberal joinder to enhance the efficiency of the judicial system." Id. "[T]he decision whether to sever counts of an indictment for separate trial is a matter committed to the sound discretion of the trial court." United States v. Wiseman, 172 F.3d 1196, 1211 (10th Cir.), cert. denied, 120 S. Ct. 211 (1999). "[T]his is an area in which the

-13-

trial judge's discretion is very broad[; t]hus, we will not reverse absent a strong showing of prejudice, which means that defendant's burden to show an abuse of discretion is a difficult one." Id. (quotation omitted). "To establish abuse of discretion, defendant must show that actual prejudice resulted from the denial." United States v. Powell , 982 F.2d 1422, 1432 (10th Cir. 1992) (quotation omitted). "Neither a mere allegation that defendant would have a better chance of acquittal in a separate trial, nor a complaint of the 'spillover effect' . . . is sufficient to warrant severance." Id. (quotation omitted).

We are satisfied from our review of the record that the environmental charges were adequately connected to the drug charges. Hines was the leader of both the drug conspiracy and the conspiracy to conceal the barrels containing hazardous waste. All the participants in the improper disposal of the hazardous materials were involved in the drug conspiracy. The FBI's discovery of the barrels at Danny Martin's house and the false police report by Hines, Martin, and Sheriff Baxter led to the discovery of the drug conspiracies. The false report commingled the hazardous waste criminal activity with the drug activities. The storage of the hazardous materials and many of the methamphetamine "cooks" both took place at H&J Auto. Numerous witnesses testified at the trial concerning both the drug conspiracy charges and the RCRA charges. All of these facts indicate that the RCRA counts and the drug conspiracy counts were part of a

common scheme, meeting the requirements of Rule 8. See Fiorillo, 186 F.3d at 1145 (the joinder of RCRA and explosives counts is proper where explosives and hazardous materials were stored in the same warehouse, discovery of the explosives led to the discovery of hazardous materials, and explosives and hazardous material were both stored without proper permits).

Nor did the district court abuse its discretion in denying Hines's Rule 14 motion to sever. We have noted generally that "[t]he joinder of multiple offenses in a single trial may result in prejudice to a defendant because the jury may use the evidence of one of the crimes charged to infer a criminal disposition on the part of the defendant from which is found his guilt of the other crime or crimes charged." Lucero v. Kerby, 133 F.3d 1299, 1314 (10th Cir. 1998) (quotation omitted). "The jury may also confuse or cumulate the evidence of the various crimes charged and find guilt when, if considered separately, it would not so find." Id. (quotation omitted).

Hines suggests that he was prejudiced by the joinder because the government "boosted its marginal evidence of the environmental counts by joining it with voluminous and confusing evidence on the drug counts," and because the evidence that he was a convicted felon, introduced under the drug-related counts, would not have been introduced under the RCRA counts. (Appellant's Br. at 27.) Contrary to those assertions, however, the RCRA counts

were supported by strong evidence, as set forth above.        See United States v. Hardwell , 80 F.3d 1471, 1486-87 (10th Cir. 1996) (upholding a denial of severance where the evidence was sufficiently strong so that any spillover effect was not prejudicial). Hines's felony conviction was introduced by stipulation and no details of the conviction were presented to the jury.        See United States v. Valentine , 706 F.2d 282, 290 (10th Cir. 1983) (holding there was no prejudice requiring severance where the mention of a prior conviction was brief and limited to the fact of conviction). As in     Lucero , we find "nothing in the record indicating the jury was unable to compartmentalize the evidence with respect to each count." 133 F.3d at 1316. The counts involved distinct facts and we find little risk that the jury confused or cumulated the evidence with respect to the separate counts. See id. at 1315.

**B**

On the basis of unprompted remarks by several witnesses suggesting Hines's involvement in other crimes, wrongs, or bad acts, Hines challenges the district court's refusal to grant a mistrial under Fed. R. Evid. 404(b). Two witnesses referred to Hines's prior involvement in a motorcycle gang, a third witness made a vague and speculative remark that might be construed as implying Hines might kill a witness against him, and a fourth witness made an uncompleted remark suggesting lives might be lost if Sheriff Baxter did not "look the other

-16-

way" during Hines's methamphetamine "cooks." In each case, the jury was admonished to disregard the testimony.

"A ruling on a motion for mistrial is within the sound discretion of the district court and will not be disturbed absent a clear abuse of that discretion." United States v. Brooks, 161 F.3d 1240, 1245 (10th Cir. 1998) (internal quotation omitted). The district court did not abuse its discretion in denying the motion for mistrial in this case. There was substantial admissible evidence of Hines's threats of violence to witnesses. The inadvertent and fleeting inadmissible remarks did not justify the drastic remedy of mistrial. See United States v. Torres, 959 F.2d 858, 860 (10th Cir. 1992). In each instance, the district court sustained Hines's objection, immediately admonished the jury to disregard the testimony, and repeated that admonition when jury deliberations began. See United States v. Castillo, 140 F.3d 874, 884 (10th Cir. 1998) ("A central assumption of our jurisprudence is that juries follow the instructions they receive."). The district court did not err in its treatment of the inadmissible testimony.

## C

Martin's counsel stated during his closing argument that "[t]here's a difference between these two defendants . . . and I think you know what the difference is. I think your verdict should reflect that, that there is a difference." (R. at 2037.) Martin's counsel later stated Martin was not "some big successful

-17-

drug dealer." Id. at 2041. Hines's counsel made no objection to the remarks, nor did he move for mistrial. The court properly instructed the jury that counsel's comments in closing statements were not evidence. Contrary to Hines's assertion of undue prejudice, we conclude the foregoing brief remarks did not so prejudice the jury as to constitute plain error warranting reversal. See Cooks v. Ward , 165 F.3d 1283, 1292 (10th Cir. 1998) (finding nothing patently erroneous in a habeas petition with respect to co-defendant's counsel's closing comment that his client was "a young, inexperienced gentleman, led into crime by an older, convicted criminal"), cert. denied , 120 S. Ct. 94 (1999).

## IV

In a claim distinct from claims he brings in conjunction with Hines, Martin challenges an evidentiary ruling, arguing the admission of evidence showing he possessed methamphetamine and firearms at the time of his arrest in Tennessee was erroneous. Martin was arrested in Oklahoma in August 1997 on the RCRA charges and was released on bond. Shortly thereafter, Martin, Hines, and others met for a final methamphetamine "cook." Martin took all of the methamphetamine produced at that "cook," and fled to Tennessee. He was arrested a few weeks later in a Tennessee hotel room, in which police found two ounces of methamphetamine and two firearms. One of the firearms recovered during Martin's arrest in Tennessee was identified by a witness as the same

firearm Martin carried during the final methamphetamine "cook" prior to his flight to Tennessee.

Martin claims the evidence of the firearms and methamphetamine recovered from the Tennessee hotel room was inadmissible as irrelevant under Fed. R. Evid. 402 because there was no connection between the possession of firearms and methamphetamine in Tennessee and the Oklahoma drug conspiracy charges against him, arguing that any probative value this evidence may have had was substantially outweighed by the danger of unfair prejudice. See Fed. R. Evid. 403.

We review the admission of this testimony for an abuse of discretion. See United States v. Davis, 40 F.3d 1069, 1073 (10th Cir. 1994). An "erroneous admission of evidence . . . is harmless unless it had a substantial influence on the outcome or leaves one in grave doubt as to whether it had such effect." United States v. Cass, 127 F.3d 1218, 1225 (10th Cir. 1997) (internal quotations omitted). We review the record as a whole to evaluate whether the error is harmless, examining the context, timing and use of any erroneously admitted evidence and comparing it to properly admitted evidence. See United States v. Glass, 128 F.3d 1398, 1403 (10th Cir. 1997).

We see no abuse of discretion here. The superceding indictment filed against Martin after his arrest in Tennessee, in which he was charged with drug

conspiracies, included his possession of methamphetamine and firearms in Tennessee. There was substantial evidence concerning Martin's involvement in numerous methamphetamine "cooks" and his involvement in an extensive conspiracy to distribute methamphetamine. The evidence of Martin's possession of methamphetamine was relevant to the government's contention that Martin had taken with him the gun and methamphetamine from the final "cook" when he fled to Tennessee. Moreover, in the context of drug distribution offenses, firearms are viewed as "'tools of the trade'--that is, means for the distribution of illegal drugs." United States v. Martinez, 938 F.2d 1078, 1083 (10th Cir. 1991). As such, they are probative of a defendant's participation in the drug distribution business and in the particular charged drug conspiracy offenses, and it is immaterial that Martin was not being tried for any offense directly related to his possession of firearms. See id.

We also conclude this testimony did not unfairly prejudice the jury because much of the evidence was of a kind similar to evidence of Martin's involvement in the Oklahoma drug conspiracies. We cannot say that any of this testimony, even if erroneously admitted, substantially influenced the trial's outcome, nor are we in grave doubt as to whether the testimony had such an effect. See Cass, 127 F.3d at 1225 (internal quotations omitted).

**V**

The judgment of the district court is AFFIRMED.

Entered for the Court

Carlos F. Lucero
Circuit Judge