**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 18a0403n.06

Case No. 17-4150

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Aug 09, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| TERRENCE MCNEIL, | ) | OHIO |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

---

BEFORE: SILER, GRIFFIN, and STRANCH, Circuit Judges.

SILER, Circuit Judge. Terrence McNeil maintained social media accounts where he pledged his support to the Islamic State of Iraq and the Levant (ISIL). On those accounts, McNeil reposted certain personal information, including names and addresses, of military men and women and encouraged others to harm those individuals. He pled guilty and was sentenced to a term of imprisonment and ordered to pay restitution. In this direct appeal, McNeil challenges the restitution he was ordered to pay. We AFFIRM.

I.

McNeil maintained several online social media accounts, through which he declared his support for ISIL on numerous occasions. On September 24, 2015, he posted personal information of approximately 100 United States servicemen and women and encouraged others to "[k]ill them

in their own lands, behead them in their own homes, stab them to death as they walk their streets thinking they are safe . . . and kill them where you find them." On September 29, 2015, McNeil reposted information of several additional military personnel that contained threats to injure them. Another post on October 3, 2015, contained a threat to injure a specific serviceman, stating that the U.S. Navy Seal had killed Osama Bin Laden and naming that serviceman "as a number one target."

A federal grand jury first indicted McNeil in December 2015. In 2017, the grand jury returned a second superseding indictment, charging McNeil with various counts of communicating a threat in interstate commerce, soliciting a crime of violence, and publicizing restricted information, and aiding and abetting such crimes.

Ultimately, the counts charging McNeil with publication of restricted information were dismissed, and he pled guilty to the remaining counts. The district court sentenced McNeil to twenty years of imprisonment. Upon the government's request, the district court ordered McNeil to pay $6,048.99 in restitution. That amount was intended to cover "the expense of security measures incurred by five victims after September 24, 2015." Specifically:

- "Benjamin" had home security expenses of $24.95 per month for 20 months (September 2015 through April 2017);

- "Daniel" had home security expenses of $48.37 per month for 22 months (September 2015 through approximately August 2017);

- "Wayne" purchased and installed stronger doors and steel locks at a cost of $1,764.01;

- "Matthew" had home security expenses of $69.99 per month for 22 months (September 2015 through approximately August 2017); and

- "David" had home security expenses of $53.73 for 22 months (September 2015 through approximately August 2017).

## II.

"We review de novo the question whether restitution is permitted under the law." *United States v. Evers*, 669 F.3d 645, 654 (6th Cir. 2012). "If it is determined that restitution is permissible, then the amount of restitution is reviewed under the abuse-of-discretion standard." *Id.*

## III.

McNeil argues that the district court erred by ordering him to pay restitution. The Mandatory Victims Restitution Act of 1996 (MVRA) provides the framework for this case. *See* 18 U.S.C. §§ 3663A, 3664. "The MVRA requires a defendant to pay restitution to identifiable victims who have suffered either physical injuries or pecuniary losses as a result of certain criminal offenses." *United States v. Vandeberg*, 201 F.3d 805, 812 (6th Cir. 2000). "Specifically, restitution is mandatory—regardless of a defendant's financial situation—when a defendant is convicted of a crime of violence, an offense against property, or an offense related to tampering with consumer products." *Id.* McNeil pled guilty to violating two statutes, including solicitation to commit a crime of violence under 18 U.S.C. § 875(c). That offense falls within the definition of "crime of violence" under the MVRA. *See* 18 U.S.C. § 3663A(c)(1)(A)(i); *see also* 18 U.S.C. § 16. Therefore, restitution was mandatory in this case.

The questions, then, become whether the district court abused its discretion with the amount of restitution that it ordered McNeil to pay and whether McNeil's conduct was the proximate cause for the victims' losses. "In determining the amount of restitution, the [g]overnment must prove the losses by a preponderance of the evidence and the court must find that the defendant's criminal conduct directly and proximately caused the actual or intended loss

to the victim." *United States v. Fowler*, 819 F.3d 298, 307 (6th Cir. 2016). "While the district court need not make specific findings in calculating restitution, the information relied upon by the district court in reaching the final calculation must have sufficient indicia of reliability to support its probable accuracy." *Id.* (internal quotation marks omitted).

McNeil first contends that the district court erred by requiring him to pay for expenses that occurred prior to the conduct for which he was convicted. For example, McNeil claims that the government sought restitution on behalf of "Benjamin," "Matthew," and "David" for home security systems that were installed before September 2015 and for ongoing expenses that they would have occurred before that date.

Although the individuals'[1] security systems may have been installed before September 2015, McNeil was not ordered to pay for those costs. Instead, the district court categorically prohibited the government from seeking restitution for expenses that were incurred before McNeil's conduct. And the government provided support for the amount each individual paid for his security system each month. Further, the government did not seek restitution for any monthly payments preceding McNeil's postings in September 2015. Thus, this documentation has "sufficient indicia of reliability." *See id.*

As to "Wayne," the government supplied the district court with invoices from Lowe's Home Improvement for additional security features he added to his home. The invoice does not contain a date for when the work was performed, but the government convincingly argues that "Wayne" would have had no need to provide greater security to his home before McNeil's postings. On this basis, we find that this information is also sufficiently reliable. *See id.*

---

[1] "Benjamin," "Daniel," "Matthew," and "David" each had security systems installed.

McNeil next argues that the district court failed to consider the factors set forth by the Supreme Court in *Paroline v. United States*, 572 U.S. 464 (2014), when ordering restitution. The district court rejected McNeil's position, finding that "*Paroline* applies in the limited context of 18 U.S.C. § 2259 offenses, including child pornography possession." We have characterized *Paroline* in a similar matter, describing it as "a case involving restitution to victims of child pornography." *United States v. Sawyer*, 825 F.3d 287, 295 (6th Cir.), *cert. denied*, 137 S. Ct. 386 (2016).

As a preliminary matter, McNeil has not pointed to any authority that *Paroline* and its line of cases should apply to this non-child-pornography case. *Cf. id.* ("*Paroline*'s concerns about the legal and administrative sensibility of adopting joint and several liability in child-pornography crimes simply do not translate to a case involving a finite conspiracy with five defendants who were acting in concert.").

Moreover, even if *Paroline*'s reasoning did apply here, the standard from that case is easily satisfied. After McNeil reposted the names and addresses of the various servicemen who are the victims in this case, they opted to either keep their security systems or to strengthen the security measures at their home. On those facts, the district court appropriately determined that "[t]he ongoing costs of maintaining a home security system during and after September 2015 are . . . attributable to [McNeil]."

Finally, the record supports the conclusion that the district court did not abuse its discretion by ordering McNeil to pay approximately $6,000 in restitution. Originally, the government sought more than $118,000 in restitution. The district court, however, subsequently required the government to provide "the specific amounts covering home security measures, relocation, and other expenses attributable to [] McNeil . . . ." After the government filed its notice of restitution

amount, McNeil filed his objections. The district court then considered McNeil's objections and found that the government had carried its burden concerning the amount of restitution.

In this posture, the district court did not abuse its discretion because it readily considered the record before it, did not require McNeil to pay for expenses incurred before his conduct, and did not incorrectly apply the law.

AFFIRMED.