NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0329n.06

No. 23-3568

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

Jul 29, 2024
KELLY L. STEPHENS, Clerk

|                                   |   |                                  |
|-----------------------------------|---|----------------------------------|
| UNITED STATES OF AMERICA,         | ) |                                  |
|                                   | ) |                                  |
|    Plaintiff-Appellee, | ) | ON APPEAL FROM THE UNITED     |
|                                   | ) | STATES DISTRICT COURT FOR        |
| v.                                | ) | THE NORTHERN DISTRICT OF         |
|                                   | ) | OHIO                             |
| DARRIN HARSLEY,                   | ) |                                  |
|                                   | ) |                                  |
|    Defendant-Appellant. | ) | OPINION                      |
|                                   | ) |                                  |

Before: MOORE, McKEAGUE, and GRIFFIN, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** Darrin Harsley pleaded guilty to three counts of distributing methamphetamine. After applying the career-offender enhancement, the district court sentenced Harsley to 262 months of imprisonment. Harsley now challenges both the procedural and substantive reasonableness of his sentence. Specifically, Harsley argues that the district court erred when it applied the career-offender enhancement; failed adequately to address his non-frivolous arguments for a variance; failed to consider certain mitigating factors when analyzing the 18 U.S.C. § 3553(a) factors; based its determination on clearly erroneous facts; and improperly weighed the § 3553(a) factors. For the following reasons, we **AFFIRM** the sentence imposed by the district court and **DENY** as moot the motion to take judicial notice.

**I. BACKGROUND**

In September 2022, following three controlled buys, Darrin Harsley was arrested for selling methamphetamine to a police confidential informant. *See* R. 18 (PSR ¶ 9–14) (Page ID #86). A grand jury returned a three-count indictment against Harsley, charging him with distribution of

methamphetamine in violation of 21 U.S.C. § 841(a)(1) and § 841(b)(1)(A). R. 18 (PSR ¶ 1–3) (Page ID #85); R. 15 (Superseding Indictment) (Page ID #53–54). In January 2023, Harsley pleaded guilty to the three-count indictment without a plea agreement. *See* R. 37 (Change of Plea Hr'g) (Page ID #178–91).

Thirteen years prior to the instant offenses, on September 2 and September 8, 2009, Harsley, then twenty years old, committed two felonious assaults. *See* R. 18 (PSR ¶ 41–42) (Page ID #92–94). No intervening arrest between the two offenses occurred. *See id.*; D. 31 (Appellant Br. at 7). As relevant here, Harsley was separately charged and convicted of felonious assault under Ohio Revised Code § 2903.11(A)(2) for the September 2 and September 8, 2009, offenses. R. 18 (PSR ¶ 41–42) (Page ID #92–94). Harsley was first charged for the September 8, 2009, assault on September 10, 2009, and was sentenced to five years of imprisonment on January 7, 2010. *Id.* ¶ 41 (Page ID #92). He was later charged for the September 2, 2009, assault on December 22, 2010, and was sentenced to seven years of imprisonment on May 4, 2011. *Id.* ¶ 42 (Page ID #93–94). Harsley was released on parole on April 29, 2021, and received early final release from parole on May 16, 2022. *Id.* ¶ 41–42 (Page ID #92–94).

In advance of sentencing for the instant convictions for distribution of methamphetamine, the United States Probation Department calculated Harsley's total offense level as 34. *Id.* ¶ 33 (Page ID #88). That calculation accounted for (1) a base offense level of 32, (2) an increase to an offense level of 37 based on the career-offender enhancement, and (3) a three-level decrease for acceptance of responsibility. *Id.* ¶ 24–33 (Page ID #87–88). Harsley's two September 2009 felony assault convictions served as the predicate offenses for the career-offender enhancement. *See* R. 18 (PSR Addendum at 26) (Page ID #107). The Probation Department calculated Harsley's

criminal-history category as VI based on his career-offender status.  R. 18 (PSR ¶ 43–45) (Page ID #95) (citing U.S.S.G. § 4B1.1(b)).  Based on these calculations, the Probation Department provided a Guidelines range of 262 to 327 months of imprisonment.  *Id.* ¶ 81 (Page ID #100).

In his objections to the Presentence Report (PSR), Harsley argued for a downward variance from the Guidelines range on the basis that the predicate offenses qualifying him for career-offender status occurred only six days apart when he was merely twenty years old.  *See* R. 18 (PSR Addendum at 26) (Page ID #107).  Harsley argued that these predicate offenses were "counted separately" for career-offender purposes based only on the fact that he was "sentenced on different dates," and he argued that "it is highly unusual that a Career Offender commit both predicate offenses within barely a week after turning 20 years old."  *Id.*  Finally, Harsley argued that the "Career Offender status overstates [his] criminal history and danger to the public" and a downward variance is thus justified.  *Id.*  In his sentencing memorandum, Harsley additionally argued that (1) district courts often grant a downward variance from the career-offender Guidelines range, and (2) the Guidelines' severe methamphetamine sentences—and disparity between sentences for methamphetamine and other drugs—likewise warranted a variance.  R. 20 (Sent'g Mem. at 6–7) (Page ID #120–21).

At his sentencing hearing, Harsley's counsel again argued that the facts of Harsley's two predicate offenses warranted a variance.  R. 38 (Sent'g Hr'g at 11) (Page ID #202).  The district court declined to grant a variance and sentenced Harsley to 262 months of imprisonment, the bottom end of his Guidelines range.  *Id.* at 31 (Page ID #222).  When the district court asked

Harsley's lawyer whether he had any further objections, i.e., the *Bostic* question,[1] Harsley's lawyer stated that he maintained his objections to the PSR. *Id.* at 33 (Page ID #224). This appeal followed.

## II. ANALYSIS

### A. Career-Offender Enhancement

A defendant is a career offender under the Sentencing Guidelines "if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). The Sentencing Guidelines provide guidance on how to determine if prior "convictions count separately for the purposes of determining career-offender status." *United States v. Powell*, 798 F.3d 431, 437 (6th Cir. 2015). If prior "sentences were imposed for offenses that were separated by an intervening arrest," then the sentences "always are counted separately." U.S.S.G. § 4A1.2(a)(2). "If there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day." *Id.* It is undisputed that, although there was no intervening arrest between Harsley's predicate offenses, the prior sentences do not result from offenses contained in the same charging instrument and the sentences were not imposed on the same day.

Before the district court, Harsley conceded that, given his two prior convictions for felonious assault under Ohio Revised Code § 2903.11(A)(2), the career-offender enhancement applied to him. *See* R. 18 (PSR Addendum at 26) (Page ID #107); R. 38 (Sent'g Hr'g at 12) (Page

---

[1]*United States v. Bostic*, 371 F.3d 865 (6th Cir. 2004).

ID #203).  When a defendant has "'explicitly agreed' that a particular guideline calculation or enhancement applies to his sentence, any challenge to that enhancement on appeal is waived." *United States v. Priddy*, 808 F.3d 676, 681 (6th Cir. 2015), *abrogated on other grounds by United States v. Stitt*, 860 F.3d 854 (6th Cir. 2017) (en banc).  Harsley explicitly conceded the applicability of the career-offender enhancement before the district court; his challenge to that enhancement is thus waived and we will not consider the argument.  *See United States v. Carter*, 89 F.4th 565, 568 (6th Cir. 2023).

## B.  Procedural Reasonableness

Harsley next argues that his sentence is both procedurally and substantively unreasonable. A sentence is procedurally unreasonable if "the district court '*fail[s] to calculate* (or improperly calculat[es]) *the Guidelines range*, treat[s] the Guidelines as mandatory, fail[s] to consider the § 3553(a) factors, select[s] a sentence based on clearly erroneous facts, or fail[s] to adequately explain the chosen sentence.'"  *United States v. Gates*, 48 F.4th 463, 469 (6th Cir. 2022) (alterations in original) (quoting *United States v. Fowler*, 819 F.3d 298, 304 (6th Cir. 2016)).  For a sentence to be procedurally reasonable, the district court must have "adequately explain[ed] the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing."  *United States v. Bolds*, 511 F.3d 568, 580 (6th Cir. 2007) (alterations in original) (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)); *see also United States v. Richardson*, 437 F.3d 550, 554 (6th Cir. 2006) (explaining that a district court is obliged "to communicate clearly its rationale for imposing the specific sentence").  Here, Harsley argues that his sentence is procedurally unreasonable because the district court (1) failed to address his non-frivolous

arguments for a lower sentence, (2) failed to consider the § 3553(a) factors, and (3) selected a sentence based on clearly erroneous facts.

### 1. Standard of Review

To determine the standard of review for challenges to the procedural reasonableness of a sentence, we must first determine which issues, if any, were preserved for appellate review. If a defendant raises a procedural-reasonableness objection in the district court at the time of sentencing, we review the procedural-reasonableness challenge for abuse of discretion. *United States v. Thomas-Mathews*, 81 F.4th 530, 541 (6th Cir. 2023). In contrast, "a 'defendant generally forfeits the right to challenge on appeal any procedural errors to which he did not object at the time of sentencing.'" *Id.* at 538 (quoting *United States v. Herrera-Zuniga*, 571 F.3d 568, 578 (6th Cir. 2009)). Thus, if a defendant does not raise an objection as to the procedural reasonableness of his sentence at the time of sentencing, we review for plain error only. *Id.* at 541. To prevail under plain-error review, a defendant must "show (1) error (2) that 'was obvious or clear,' (3) that 'affected [their] substantial rights' and (4) that 'affected the fairness, integrity, or public reputation of the judicial proceedings.'" *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc) (quoting *United States v. Gardiner*, 463 F.3d 445, 459 (6th Cir. 2006)).

At the conclusion of the sentencing hearing, the district court asked Harsley's lawyer whether he had any objections other than those the court had ruled on. R. 38 (Sent'g Hr'g at 33) (Page ID #224). Harsley's lawyer responded that he "would maintain the objections we raised with the PS[R]." *Id.* Because the reference to the PSR included objections as to Harsley's "mitigating factors and the disproportionate effect of the career offender guidelines," Harsley argues on appeal that we should review these issues for abuse of discretion. D. 31 (Appellant Br.

at 18). Harsley concedes, however, that because "no objection was raised at the sentencing hearing" as to the district court's alleged selection of "a sentence based on clearly erroneous facts," we review this issue for plain error. *Id.* The government argues that plain-error review is proper for all of Harsley's procedural-reasonableness arguments. D. 38 (Appellee Br. at 40).

The government is correct that Harsley's procedural-reasonableness arguments are all subject to plain-error review. Harsley argues that the district court failed to address (1) his non-frivolous arguments about his criminal history and the methamphetamine Guidelines and (2) certain mitigating § 3553(a) factors. After being asked the *Bostic* question, Harsley's lawyer "maintain[ed] the objections" raised in response to the PSR, but did not argue that the district court *failed to address* Harsley's criminal history, the methamphetamine Guidelines, or any of the § 3553(a) factors. R. 38 (Sent'g Hr'g at 33) (Page ID #224). And the objections to the PSR did not mention the district court's alleged failure to address these arguments. Nor could they. When "an appeal concerns whether a district court *addressed* a certain issue at sentencing, 'such an objection must be preserved by an objection *after* the sentencing because it "cannot be 'preserved' in advance of a sentencing event that has yet to occur."'" *Thomas-Mathews*, 81 F.4th at 539 (quoting *United States v. Kamper*, 748 F.3d 728, 740 (6th Cir. 2014)). Stated otherwise, Harsley could not have raised in his objections to the PSR the district court's later failure to address an argument at sentencing. *See id.* (explaining that a defendant "could not have possibly objected to the district court's explanation of its sentence before the district court actually explained its sentence"). Because Harsley did not preserve these procedural-reasonableness challenges for appeal, we review for plain error.

### 2. Non-Frivolous Arguments

When "a defendant raises a particular argument in seeking a lower sentence, the record must reflect both that the district judge considered the defendant's argument and that the judge explained the basis for rejecting it." *Richardson*, 437 F.3d at 554. This obligation "assures not only that the defendant can understand the basis for the particular sentence but also that the reviewing court can intelligently determine whether the specific sentence is indeed [procedurally] reasonable." *Id.* On that basis, this court has repeatedly "held that a district court plainly errs where it is 'non-responsive to [a non-frivolous] argument' at sentencing." *Thomas-Mathews*, 81 F.4th at 544 (alteration in original) (quoting *United States v. Wallace*, 597 F.3d 794, 803 (6th Cir. 2010)) (listing cases).

Harsley argues that he raised two non-frivolous arguments that the district court failed to address. First, according to Harsley, the district court failed to address his argument that his "criminal history was less severe than two-thirds of career offenders and [that] history, in conjunction with [his] personal characteristics and circumstances, counseled for a downward variance." D. 31 (Appellant Br. at 19). Harsley next argues that the district court failed to address his "argument that a downward variance was necessary to account for the severe guideline recommendations for methamphetamine." *Id.*

### a. Criminal History

Harsley argues that the district court failed sufficiently to consider his argument "that his criminal history was less extensive than two-thirds of all career offenders." *Id.* at 21. In district court, Harsley "submitted evidence that the average sentence for career offenders was 141 months, and that over half of career offenders receive a downward variance." *Id.* (citing R. 20 (Sent'g

Mem. at 6) (Page ID #120)). Harsley further argued that his criminal history was relatively low compared to other career offenders; "the career offender guidelines were too high as applied to his specific past offenses"; and because his prior "crimes occurred in his early adulthood" over thirteen years ago, they do not "properly represent" his dangerousness. *Id.* at 21–23.

Contrary to Harsley's argument on appeal, the district court adequately considered this argument when making its sentencing determination. Directly following Harsley's counsel's argument about Harsley's criminal history, the district court explained that it did not believe that the argument warranted a downward variance. *See* R. 38 (Sent'g Hr'g at 17–18) (Page ID #208–09). The district court explained that Harsley's criminal history included not merely the two predicate convictions, but also several prior firearm and drug convictions, thus indicating to the district court that Harsley had a history of dangerousness. *Id.* The district court likewise acknowledged the statistics indicating that Harsley's Guidelines range was "longer and higher" than average. *Id.* at 30–31 (Page ID #221–22). Those statistics, together with the other § 3553(a) factors, "counsel[ed] for a low-end guideline sentence." *Id.* at 31 (Page ID #222). Stated otherwise, the district court *did* consider Harsley's argument—and in fact chose a low-end Guidelines range sentence on that basis. *Id.* The district court was obligated to consider and "logically respon[d]" to Harsley's argument, but it was not obligated to *accept* Harsley's conclusion that a variance was warranted. The district court did not plainly err.

Harsley argues extensively on appeal that his criminal history—and his two September 2009 predicate offenses, in particular—do not justify the career-offender enhancement. Even if we construe Harsley's argument as suggesting that the district court inadequately considered a

variance on the basis that Harsley's predicate convictions *should not* qualify him as a career offender, the district court nonetheless did not plainly err.

It is undisputed that, per the express terms of the career-offender enhancement, Harsley's prior and current convictions qualify him as a career offender. *See* D. 31 (Appellant Br. at 7–11); D. 38 (Appellee Br. at 31–33). Despite that clear text, Harsley argues that because his "previous convictions arose from a single episode," the history and purpose of the career-offender enhancement indicate that he "should not be considered a career offender." D. 31 (Appellant Br. at 8–9); *see also id.* at 10 ("Here, there was no intervening arrest, and the conduct occurred extremely close in time, within approximately one week[.] . . . [He] therefore did not represent the average career offender with a long criminal history and intervening time to reexamine and mend his ways.").

The exceptions built into the career-offender enhancement recognize "that a single criminal episode may give rise to multiple convictions . . . and should count only once no matter how the prosecutor drafts the charges." *Powell*, 798 F.3d at 438 (quoting *United States v. Morgan*, 354 F.3d 621, 623 (7th Cir. 2003)). The enhancement aims to ensure that "recidivist[s'] . . . criminal record[s] should be tallied in full" based on their "failure to adhere to the law," not based on "[c]lever charging practices [that] multiply [their] convictions." *Id.* (quoting *Morgan*, 354 F.3d at 623); *see also* U.S.S.G. § 4B1.1 cmt. background (explaining that the career-offender enhancement is focused "on the class of recidivist offenders for whom a lengthy term of imprisonment is appropriate"). Harsley argues that, contrary to the enhancement's purpose, he "was sentenced as a career offender in this case [*merely*] because the state failed to charge [his] previous 'related' convictions together." D. 31 (Appellant Br. at 11–12) (citation omitted). Stated

otherwise, Harsley contends that he is a career offender only because of a prosecutor's charging practices. To allow an arbitrary charging practice to determine career-offender status is an affront to the purpose of the enhancement.

Harsley's policy argument may be compelling. Arguably, his criminal record does not look like the "recidivist offenders" for whom the career-offender enhancement is aimed. U.S.S.G. § 4B1.1 cmt. background; *see also Powell*, 798 F.3d at 438. But the district court adequately explained that it saw Harsley's criminal history as serious. *See* R. 38 (Sent'g Hr'g at 17–18) (Page ID #208–09). Though district courts may readily vary a sentence on the basis of a policy disagreement, *see Kimbrough v. United States*, 552 U.S. 85, 101 (2007); *United States v. Brooks*, 628 F.3d 791, 799 (6th Cir. 2011), "the fact that a district court *may* disagree with a Guideline for policy reasons and *may* reject the Guidelines range because of that disagreement does not mean that the court *must* disagree with that Guideline or that it *must* reject the Guidelines range if it disagrees," *Brooks*, 628 F.3d at 800. Because rejecting the Guidelines range for policy reasons was within the district court's discretion, failing to do so was, accordingly, not plainly erroneous.

### b. Methamphetamine Guideline

Harsley next argues that the district court "failed to consider [his] argument for a downward variance due to the harsh treatment of methamphetamine by the sentencing guidelines as compared to other substances." D. 31 (Appellant Br. at 23–24). In his sentencing memorandum, Harsley argued for "a downward variance to reduce sentencing disparities between defendant[s] sentenced for methamphetamine[] and defendants sentenced for other drugs." R. 20 (Sent'g Mem. at 7) (Page ID #121). Harsley continued that, although "methamphetamine is a dangerous drug, there is no

sound rationale for treating it so differently from other dangerous drugs," and "[a] downward variance will therefore help to avoid unwarranted sentencing disparities." *Id.*

Harsley is correct that, despite the argument in his sentencing memorandum, "[t]here is not a single reference on the record" of the district court acknowledging this argument. D. 31 (Appellant Br. at 25). Under plain-error review, Harsley must show that the district court erred, the error was obvious or clear, the error affected his substantial rights, and the error affected the fairness, integrity, or reputation of the judicial proceedings. *Vonner*, 516 F.3d at 386.

Turning to the first two elements of the plain-error analysis, we assume that the district court made an error that was obvious or clear when it failed to address the methamphetamine argument that Harsley raised in his sentencing memorandum. The government does not argue that the district court did in fact address this argument, but it instead argues that, because Harsley's counsel raised this argument only in the sentencing memorandum and never mentioned it during the sentencing hearing, the district court did not err in declining to address it. *See* D. 38 (Appellee Br. at 45) (citing *Carter*, 89 F.4th at 568–71 (6th Cir. 2023)).[2] But generally "a district court plainly errs where it is 'non-responsive to [a non-frivolous] argument' at sentencing." *Thomas-Mathews*, 81 F.4th at 544 (quoting *Wallace*, 597 F.3d at 803)). We need not decide the extent of any error that occurred here, though, because Harsley's argument fails under the rest of the plain-error standard.

---

[2]The government's citation to *United States v. Carter*, 89 F.4th 565, is misplaced. In that case, the defendant "specific[ally] conce[ded] . . . the precise issue raised on appeal." *Id.* at 569. The court, accordingly, declined to address the merits of the appeal and thus did not conduct plain-error review. *See id.* at 568–69.

Even if we assume that the district court committed a clear error, it did not affect Harsley's substantial rights. A district court's "sentencing error affects a defendant's substantial rights when there is a reasonable probability that, but for the error, she would have received a more favorable sentence." *United States v. Wilson*, 614 F.3d 219, 223 (6th Cir. 2010). As discussed above, district courts may disagree with the Sentencing Guidelines for policy reasons and may, accordingly, reject a Guidelines range and vary from the range on that basis. *See Kimbrough*, 552 U.S. at 101; *Brooks*, 628 F.3d at 799. District courts, however, are not required to do so. *See Brooks*, 628 F.3d at 800. Because rejecting the Guidelines range for policy reasons was completely within the district court's discretion, there is not a reasonable probability that, had the court considered this argument, it would have given Harsley a more favorable sentence. The district court's failure to address this argument was, accordingly, not plainly erroneous.

### 3. § 3553(a) Factors

Harsley next argues that the district court failed to address relevant § 3553(a) factors "because, to the extent that the district court discussed [his] 'history,' the discussion was limited to criminal convictions." D. 31 (Appellant Br. at 25). According to Harsley, though "the district court discussed [his] criminal record at length," the court "only engaged in a 'terse discussion' of his personal history and characteristics." *Id.* at 26. He further argues the district court "failed to engage with . . . key mitigating factors," such as Harsley's alcoholism, the violence he witnessed as a child, the numerous rehabilitative programs he completed while incarcerated, and his effort "to co-parent his son and be a good father figure for him." *Id.* at 27.

In *United States v. Thomas*, we held that a district court did not adequately address the § 3553(a) factors when it made only a "general statement . . . that it had received, read, and

13

understood the sentencing memorandum." 498 F.3d 336, 341 (6th Cir. 2007). The *Thomas* court distinguished the record in that case from the record in *Rita v. United States*, 551 U.S. 338 (2007). "[T]he record in *Rita* made clear that the district court considered and rejected the defendant's arguments for a lower sentence, as the district court summarized the defendant's three arguments before rejecting them and sentencing the defendant within the Guidelines range." *Thomas*, 498 F.3d at 341. Whereas the *Rita* district court "set forth enough to satisfy the appellate court that he ha[d] considered the parties' arguments and ha[d] a reasoned basis for exercising his own legal decisionmaking authority," *id.* (quoting *Rita*, 551 U.S. at 356), the *Thomas* district court provided only a "conclusory statement [that left] us unsure as to whether the district court adequately considered and rejected [the defendant's] arguments regarding proper application of the § 3553(a) factors or whether it misconstrued, ignored, or forgot [the defendant's] arguments," *id*.

Likewise, in *Thomas-Mathews*, we held that "[t]he district court's terse discussion of the § 3553(a) factors and its consideration only of Thomas-Mathews' criminal history and failure to address Thomas-Mathews' personal history and characteristics constituted error." 81 F.4th at 545. In *Thomas-Mathews*, the district court did not consider or discuss the defendant's "childhood, his family, his children, his role in the community, or his career as a barber," all of which the defendant "repeatedly highlighted . . . in his sentencing memo and at his sentencing hearing." *Id.* at 546.

In contrast to the *Thomas* and *Thomas-Mathews* cases, the district court here adequately addressed Harsley's personal history, characteristics, and other mitigating § 3553(a) factors. After discussing Harsley's criminal history and institutional conduct reports, the district court turned to Harsley's childhood, noting that he "was raised by both of his parents," and "had a good relationship" with them. R. 38 (Sent'g Hr'g at 26) (Page ID #217). The district court noted that,

14

when "he was 16 years old a friend [of Harsley's] died as a result of violence or a firearm," and that Harsley "took that particular incident hard." *Id.* at 26–27 (Page ID #217–18). The district court also mentioned that Harsley "ha[s] a 14-year-old son" and "claims to be an alcoholic." *Id.* at 27 (Page ID #218). Though the court did not mention every rehabilitative program that Harsley completed while incarcerated, it did mention that "he received his GED in 2011 while he was in prison," and it referenced programs he completed, including "Red Cross, 12 Steps, . . . Victim Awareness, and some others." *Id.* at 28 (Page ID #219).

Whereas the district courts in *Thomas* and *Thomas-Mathews* made only a "general statement . . . that it had received, read, and understood the sentencing memorandum" and made no mention of the specifics of the defendants' arguments, *Thomas*, 498 F.3d at 341, the district court here specifically noted the details of Harsley's arguments. The *Thomas* court's discussion of *Rita* is apt: Like the record in *Rita*, the record here "made clear that the district court considered and rejected the defendant's arguments for a lower sentence." *Id.* The district court provided more than a "conclusory statement" and "set forth enough to satisfy the appellate court that he ha[d] considered the parties' arguments and ha[d] a reasoned basis for exercising his own legal decisionmaking authority." *Id.* (quoting *Rita*, 551 U.S. at 356). On that basis, the district court did not plainly err.

### 4. Factual Findings

Harsley argues that the district court based its sentencing determination on two clearly erroneous facts: (1) that "when [Harsley is] on the streets, he's got a gun all the time," and (2) that he did not grow up in a "difficult" neighborhood. R. 38 (Sent'g Hr'g at 18, 27) (Page ID #209, 218); D. 31 (Appellant Br. at 28–29). To demonstrate that a sentence is procedurally unreasonable

because the district court based its determination on clearly erroneous facts, a defendant must establish that the relied-upon facts are "materially false or unreliable, and that such false or unreliable information actually served as the basis for the sentence." *United States v. Adams*, 873 F.3d 512, 517 (6th Cir. 2017) (quoting *United States v. Robinson*, 898 F.2d 1111, 1116 (6th Cir. 1990)). Because Harsley did not preserve this argument, we review for plain error.

Even if Harsley could demonstrate that either of these statements was clearly erroneous, Harsley cannot demonstrate that these findings affected his substantial rights. As noted above, to demonstrate that an error affected his substantial rights, Harsley must show that "there is a reasonable probability that, but for the error, [he] would have received a more favorable sentence." *Wilson*, 614 F.3d at 223. At sentencing, the district court recounted several factors that contributed to Harsley's lengthy sentence. *See* R. 38 (Sent'g Hr'g at 24–31) (Page ID #215–20). Harsley "was involved in a substantial amount of drug trafficking activity," *id.* at 24 (Page ID #215); he had a lengthy criminal history that included several firearm offenses, including one offense in which "[h]e had six firearms," *id.* at 25–26 (Page ID #216–17); he had forty conduct reports while incarcerated, including for drug-related conduct, *id.* at 28–29 (Page ID #219–20); and the district court expressed concern that methamphetamine, the drug Harsley was convicted for dealing, is "ravaging our communities," *id.* at 29 (Page ID #220). The district court thus thoroughly explained the basis for its bottom-of-Guidelines sentence. Based on the district court's discussion of numerous factors and only minimal discussion of each of the two allegedly erroneous points, Harsley presents no evidence that these statements "actually served as the basis for the sentence," *Adams*, 873 F.3d at 517, or that "there is a reasonable probability that, but for the error, [he] would have received a more favorable sentence," *Wilson*, 614 F.3d at 223.

16

## C. Substantive Reasonableness

Because Harsley's sentence is procedurally sound, we turn next to substantive reasonableness. Defendants are "not required to object to the substantive reasonableness of [their] sentence to preserve that issue for appeal." *Herrera-Zuniga*, 571 F.3d at 578. Challenges to the substantive reasonableness of a sentence are thus reviewed for abuse of discretion. *Bolds*, 511 F.3d at 581. In analyzing substantive reasonableness, we consider "whether a 'sentence is too long (if a defendant appeals) or too short (if the government appeals).'" *United States v. Boucher*, 937 F.3d 702, 707 (6th Cir. 2019) (quoting *United States v. Parrish*, 915 F.3d 1043, 1047 (6th Cir. 2019)). To gauge "the substantive reasonableness of a sentence," moreover, "we ask whether the sentencing court gave reasonable *weight* to each relevant factor." *Id.* "Sentences within a defendant's Guidelines range are presumptively substantively reasonable." *United States v. Pirosko*, 787 F.3d 358, 374 (6th Cir. 2015).

Harsley argues that his sentence is substantively unreasonable because "[t]he district court assigned excessive weight to the violence of [his] past crimes and failed to weigh mitigating factors like [his] history and characteristics." D. 31 (Appellant Br. at 34). Harsley's Guidelines range was 262 to 327 months of imprisonment, R. 18 (PSR ¶ 81) (Page ID #100); the district court sentenced him to 262 months, the very bottom of that range, R. 38 (Sent'g Hr'g at 31) (Page ID #222). We therefore begin with a presumption of substantive reasonableness. *Pirosko*, 787 F.3d at 374.

Harsley has not overcome this presumption. The district court sufficiently discussed—and weighed—Harsley's past crimes with his family history, institutional record, childhood experiences, and rehabilitative programs. *See, e.g.*, R. 38 (Sent'g Hr'g at 26–28) (Page ID #217–

17

19). Though Harsley disagrees with the weight the district court placed on his criminal history, "it was reasonable for the district court to place substantial weight on [his] criminal history in reaching its sentencing determination." *United States v. Webb*, 403 F.3d 373, 384 (6th Cir. 2005). Our task "is not to pick the sentence that we would prefer (whether higher or lower), but only to ensure that the sentence chosen by the district court fell within its broad range of reasoned discretion." *United States v. Lynde*, 926 F.3d 275, 283 (6th Cir. 2019). Based on this record and the presumption of substantive reasonableness granted to this bottom-of-Guidelines sentence, we cannot say that Harsley has demonstrated that his "sentence is too long" or that the district court failed to give "reasonable *weight* to each relevant factor." *Boucher*, 937 F.3d at 707. The district court thus did not abuse its discretion.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the sentence imposed by the district court and **DENY** as moot the motion to take judicial notice.